Christian Kernkamp (CA Bar No. 314928; NY Bar No. 5721923)
ck@kernkamplaw.com
Kernkamp Law, APC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (213) 214-3030
Facsimile: (213) 433-3595

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIURA CORPORATION, DBA SASABUNE BEVERLY HILLS AND NARGIZA LUTZ,<br><br>Plaintiffs,<br><br>v.<br><br>MUNTU DAVIS, M.D., M.P.H., IN HIS OFFICIAL CAPACITY AS HEALTH OFFICER FOR THE COUNTY OF LOS ANGELES,<br><br>Defendant. | No. 2:20-cv-05497<br><br>**VERIFIED COMPLAINT FOR INJUNTIVE AND DECLARATORY RELIEF** |

# NATURE OF THE ACTION

1. This is a civil rights lawsuit seeking to address unconstitutional provisions appearing in an order ("Order") issued by the Health Officer for the County of Los Angeles (the "County") in response to the COVID-19 pandemic. (A copy of the Order is attached as Exhibit A.) The provisions of the Order at issue compels various establishments within the County, from restaurants, to offices, to places of worship, to collect the personal information of each patron and disclose it upon demand to the County of Los Angeles. Ostensibly, these provisions are to facilitate the County's contact tracing efforts. Unfortunately, they are so sweeping in nature that the result is a countywide data collection and warrantless search regime without appropriate safeguards in place. Participation is not discretionary, it is compulsory. Those establishments failing to comply with the Order face civil and criminal sanctions. The Order in its present form is unlawful and infringes on the fundamental rights of citizens. There is no pandemic exception to the constitution.

2. In practice, the Order compels thousands of establishments across the County to collect, store, and provide upon demand the private information of the approximately 10 million people residing in the County as they go to dine, to consult with professionals such as lawyers and doctors, and attend gatherings at places of worship. The compulsory nature of the Order stands in contrast to many other counties and states across the country that have asked, but not forced, businesses to collect personal information of citizens for purposes of contact tracing. This trend is echoed in the field of digital contact tracing, where the applications are opt-in, such as the Bluetooth-based contact tracing approach developed by technology giants Google and Apple.[1]

3. The fact that most government officials have pursued a discretionary rather than compulsory approach to contact tracing speaks to a number of difficulties

---

[1] Information on Apple and Google's Exposure Notification, https://covid19-static.cdn-apple.com/applications/covid19/current/static/contact-tracing/pdf/ExposureNotification-BluetoothSpecificationv1.2.pdf

associated with the practice itself. Many citizens simply do not wish to participate in contact tracing out of privacy concerns and lack of trust in the security of their data. In a written statement issued April 16, 2020, the National Association of County and City Health Officials (NACCHO) warned that "contact tracers need to be able to gain the trust of the contact during this time of great stress […]."[2]

4.  Indeed, the few that have tried to compel businesses to collect data for purposes of contact tracing have not been well received. The Governor of Washington had to issue a memorandum backtracking on his prior executive order compelling such collection.[3] The health officer in Linn County, Kansas, tried compelled contact tracing for all of two weeks before changing his mind after being met with public backlash and a lawsuit in which the American Civil Liberties Union filed an amicus curiae brief in support of the plaintiff.[4] There have even been reports of government employees conducting contract tracing receiving threats.[5]

5.  After these failed experiments, governments are largely moving forward with voluntary contact tracing programs, including in Kansas, where the Legislature and Governor have agreed upon a voluntary contact tracing program where information is made available only by agreement of all parties or through a judicial warrant. In recent weeks, the legislature has introduced the Exposure Notification Privacy Act, the COVID-19 Consumer Data Protection Act, and the Public Health Emergency Privacy Act.[6] Clearly, there is a growing privacy concern when it comes to contact

---

[2] NACCHO Position Statement, https://www.naccho.org/uploads/full-width-images/Contact-Tracing-Statement-4-16-2020.pdf
[3] Revised Customer Log Requirements Memo, https://www.governor.wa.gov/sites/default/files/COVID19CustomerLogMemo.pdf
[4] Worried about COVID-19 contact tracing and privacy? Kansas has the right approach, https://www.kansascity.com/opinion/editorials/article243438946.html
[5] Local Public Health Workers Report Hostile Threats And Fears About Contact Tracing, https://www.npr.org/sections/health-shots/2020/06/03/868566600/local-public-health-workers-report-hostile-threats-and-fears-about-contact-traci
[6] Cantwell-Cassidy Exposure Notification Privacy Act – A Bipartisan Bill on Disease Contact Tracing, https://www.natlawreview.com/article/cantwell-cassidy-exposure-notification-privacy-act-bipartisan-bill-disease-contact

1  tracing.

2  6. The Order issued by Defendant Dr. Muntu Davis ("Defendant" or "Dr.
3  Davis"), Health Director for the County, in its present form, passes the difficult task
4  of contact tracing on to the private citizens of the County. It does not ask, it
5  compels. The Order does not provide any direction on how exactly businesses are
6  to collect and safeguard the private information of their patrons. it fails to include a
7  warrant requirement, search parameters or a method for an aggrieved establishment
8  to obtain a precompliance review. The Order contains no sunset provision and will
9  continue in perpetuity until it is revised, rescinded, superseded, or amended by the
10 Health Officer. Violations of the Order are punishable with imprisonment and fines.

## THE PARTIES

12 7. Plaintiff Miura Corporation is a California corporation doing business as
13 Sasabune Beverly Hills ("Sasabune"). Sasabune is a sushi restaurant owned by
14 first-generation immigrants and is located in the City of Beverly Hills, County of
15 Los Angeles.

16 8. Plaintiff Nargiza Lutz ("Lutz") is an individual residing within the County of
17 Los Angeles.

18 9. Defendant Muntu Davis, M.D., M.P.H ("Defendant" or "Dr. Davis") is the
19 Health Officer for the County of Los Angeles Department of Health and is sued in
20 his official capacity.

## JURISDICTION AND VENUE

22 10. This Court has subject matter jurisdiction over the claims asserted in this
23 action pursuant to 28 U.S.C. § 1331 (federal question) as the action involves
24 interpretation of the First, Fourth, and Fourteenth Amendments to the United States
25 Constitution and seeks to enjoin Defendant from interfering with federal rights.

26 11. Jurisdiction is further provided under 28 U.S.C. § 1343(a)(3)-(4) to redress
27 the deprivation, under color of any State law, statute, ordinance, regulation, custom
28 or usage, of any right, privilege or immunity secured by the Constitution of the

1  United States or by any Act of Congress providing for equal rights of citizens or of
2  all persons within the jurisdiction of the United States and to recover damages or to
3  secure equitable or other relief under any Act of Congress providing for the
4  protection of civil rights. The Court also has jurisdiction under 42 U.S. Code
5  § 1983, as Plaintiffs' claims involve deprivations of constitutional rights.
6   12. Venue is proper pursuant to 28 U.S.C. § 1391 because all parties reside
7  within the Central District of California and the conduct underlying the action
8  occurred there.

## FACTUAL BACKGROUND

13. Californians have been staying home since Governor Gavin Newsom issued a statewide stay at home order on March 19, 2020. The State has created a Resiliency Roadmap as a guide to slowly reopening in four stages. A county within the State may apply for a variance to move to reopen faster if it can show it has met certain criteria, including a stabilization of hospitalizations of COVID patients, adequate testing capacity, and means to conduct contact tracing. Los Angeles County and many other counties within the State have applied for and received such a variance.[7]

14. Dr. Davis, as the Health Officer for the County's Department of Health, has guided the County's response to COVID-19. In doing so, he has applied for a variance, made public statements regarding the direction the County is taking, and has issued several orders relating to the reopening of businesses and resumption of activities after the months long quarantine.

15. On June 18, 2020, Dr. Davis issued the revised Order challenged in this lawsuit. The Order provides guidelines and reopening protocols for a number of establishments as the County enters Stage 3 of California's Resiliency Roadmap. Appendix D of the Order includes a requirement that places of worship collect the

---

[7] Variance Attestation Submitted by Dr. Davis on May 18, 2020,
https://www.cdph.ca.gov/Programs/CID/DCDC/CDPH%20Document%20Library/COVID-19/LA-County-Attestation.pdf

Verified Complaint for Injunctive and Declaratory Relief - 5

personal information of patrons::

> **To the extent possible, visitors to the worksite are by appointment only and are pre-registered in a visitor log that includes a visitor's name, phone number and email address. Visitors are instructed to come to their appointments alone. If a visitor must be accompanied by another person (e.g., for translation assistance, or because the visitor is a minor, or has minor children) their information is captured in the visitor log.**

Appendix F of the Order includes a requirement that offices collect the personal information of visitors:

> **Pre-registration is offered for all services and ceremonies to include participants name, email, and phone number.**

Appendix I of the Order includes a requirement that dine-in restaurants collect the personal information of customers:

> **On-site dining made by reservation or customers notified to call in advance to confirm seating/serving capacity, where possible. Contact information for each party is collected either at time of reservation booking or on site to allow for contact tracing should this be required.**

Appendix J of the Order includes a requirement that music, film, and television productions collect the private information of participants:

> **A listing of all cast and crew participating in the filming must be maintained in case there is a need to perform contact tracing in the event of an illness or positive viral test in cast or crew.**
>
> **All sessions should be booked in advance with the expected number of participants recorded at booking to ensure that physical distancing can be maintained.**
> **A visitor log should be maintained with name and contact information of all participants.**

Appendix N of the Order requires professional sports leagues and facilities collect the private information of participants:

> **Teams keep a detailed facility log that records a list of all individuals who are present at the team facility on a given day, including the person's name and contact information, including their phone number and email address.**
>
> **Visitors to the facility are disallowed to the extent possible, but if a visitor must be admitted, the team has a record of any visitor's name and contact information including the visitor's phone number and email address in the facility log.**

Appendix R contains the following provision covering personal care establishments:

> **Maintain a log of all clients with contact information (name, date/time of visit, address, phone and email) if possible, this can be done at the time of registration.**

Appendix S requires bars, wineries and brewery tasting rooms to collect the private information of their patrons:

> **If feasible institute a reservation system or customers should be notified to call in advance to confirm seating/serving capacity, where possible. Contact information for each party is collected either at time of reservation booking or on site if practicable in the normal course of business operations to allow for contact tracing should this be required.**

16. The Order advises persons to read it carefully, states that "all businesses covered by this guidance must implement all applicable measures" and warns that "Violation of or failure to comply with this Order is a crime punishable by fine, imprisonment, or both." The Order cites California Health and Safety Code § 120295, which permits a fine up to one thousand dollars and imprisonment up to 90

days, and Los Angeles County Code § 11.02.080, which permits a fine up to five hundred dollars and imprisonment up to six months. Both sections call for each day an offense is continued to constitute a separate offense, making the potential penalties quite large.

17. The Order does not specify how these establishments are to obtain and store the private information of their customers, nor does it direct how long such information shall be kept. The Order does not contain a precompliance review process identifying reasonable parameters limiting the scope of requests by frequency or breadth in any way. As it stands, the County can request an entire contact list spanning many days or weeks without any justification.

18. The Order places Sasabune in a difficult bind as it, like many other businesses, begins to reopen under immense financial pressure caused by months of operational losses. Sasabune is forced to try to compile and disclose on demand the personal information of its customers to the County. The Order places Sasabune in an uncomfortable position where it must try to obtain the personal information of every customer, information many of whom simply do not wish to provide. When a customer refuses to provide the information, Sasabune can either decline to serve the person at its own financial peril or serve the customer at risk of violating the Order and falling victim to its civil and criminal sanctions.

19. The Order constitutes an invasion of Sasabune's privacy and property rights and creates an atmosphere of additional stress during a time when restaurants are already suffering greatly from the months long quarantine. Sasabune does not consent to this warrantless search regime and has been injured by it as a direct result of Defendant's actions. The warrantless search regime constitutes an ongoing violation of federal law. The warrantless search regime contained in the Order has caused Sasabune to suffer harm and Sasabune is in eminent danger of suffering additional harm in the future if Defendant is not enjoined.

20. The Order also compels the collection of citizens personal information and

tracks their movements through the County. This surveillance and tracking aspect of the Order has a chilling effect and violates the freedom of association protections afforded by the First and Fourteenth Amendments. Plaintiff Lutz cannot participate in religious gatherings, visit her doctor, attorney, or eat at her favorite restaurant without turning over her private information as required by the Order.

21. There exists an actual controversy between Plaintiffs and Defendant related to Plaintiffs' rights under the United States Constitution and a judicial determination is necessary to determine said rights. Plaintiffs request a judicial determination of their rights with respect to the Order and the compelled data collection and warrantless searches it promotes. Plaintiffs requests this Court issue a very narrow declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 enjoining the enforcement of just these specific provisions appearing in the Order.

## FIRST CLAIM FOR VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION

22. Plaintiffs reallege and incorporate each of the preceding paragraphs.

23. The Fourth Amendment to the Constitution of the United States provides "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." The Fourth Amendment is incorporated against California by the Fourteenth Amendment to the Constitution of the United States.

24. The Fourth Amendment protects people, not places, and its purpose is to protect from unreasonable government intrusions. *Katz v. United States*, 389 U.S. 347, 357, (1967); *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). Searches outside the judicial process are per se unreasonable and subject only to relatively few exceptions. *City of Los Angeles., Calif. v. Patel*, 576 U.S. 409 (2015).

1  Administrative searches are one such exception, but administrative searches must
2  afford the aggrieved citizen the opportunity to obtain a precompliance review
3  before a neutral decisionmaker. *Id*.
4    25. The Order at issue in this case compels businesses to compile and store
5  private information to be provided at any time, without a warrant, and without any
6  precompliance review process in place. The Order tracks citizens and collects their
7  personal data as they move throughout the County. This compelled data collection
8  and warrantless search regime is unconstitutional on its face and as applied to
9  Plaintiffs. It violates the Fourth and Fourteenth Amendments to the United States
10 Constitution.
11    26. Defendant issued this unconstitutional Order containing the warrantless
12 search regime causing harm to Plaintiffs. Defendant's actions have violated
13 Plaintiffs' rights and caused harm and continue to cause them harm. Plaintiffs have
14 no other remedy to address its concerns regarding this unconstitutional Order.
15    27. Absent a declaration by this Court that the compelled data collection and
16 warrantless search regime is unlawful and permanently enjoined, Plaintiffs will
17 continue to suffer harm.

**SECOND CLAM FOR VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION**

   28. Plaintiffs realleges and incorporate each of the preceding paragraphs.
   29. The First Amendment and Fourteenth Amendments to the Constitution of the United States recognize and protect the right to freedom of association. Plaintiff Lutz desires to associate with various establishments within the County of Los Angeles, including religious and political organizations, her doctor, her attorney, and several restaurants.
   30. Defendant's widespread data collection program and warrantless search regime infringe upon Plaintiff's Lutz' freedom of association and has a chilling effect on her movements and participation in important activities.

31. Defendant's Order has deterred Plaintiff Lutz from freely associating and participating in certain activities and continues to do so.

32. As a result, Plaintiff Lutz has suffered harm and will continue to suffer harm.

## PRAYER FOR RELIEF

Plaintiffs respectfully requests this Court to grant the following relief:

33. Issue a narrow declaratory judgment pursuant to 28 U.S.C. § 2201 that the compelled data collection and warrantless search regime contained in the Order violates the First, Fourth and Fourteenth Amendments to the United States Constitution, is facially invalid, and invalid as applied to Plaintiffs;

34. Issue an injunction preventing Defendant from enforcing these unconstitutional provisions appearing in the Order;

35. Award reasonable costs and attorney's fees pursuant to 42 U.S.C. § 1988; and

36. Award further relief as this Court finds appropriate and just under the circumstances.

Dated: June 20, 2020

/s/ Christian Kernkamp
Christian Kernkamp
(CA Bar No. 314928)
(NY Bar No. 5721923)
ck@kernkamplaw.com
Kernkamp Law, APC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (213) 214-3030
Facsimile: (213) 433-3595

Attorney for Plaintiffs

## VERIFICATION

I, Naoko Miura, hereby declare that:

1. I am an owner and officer of Miura Corporation, dba Sasabune Beverly Hills, one of the plaintiffs in this action.
2. I have read the above Verified Complaint and know its contents and it is true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed June 19, 2020, in Los Angeles, California.

*[signature]*

Naoko Miura

1

## VERIFICATION

I, Nargiza Lutz, hereby declare that:

1. I am one of the plaintiffs in this action.
2. I have read the above Verified Complaint and know its contents and it is true to the best of my knowledge and belief.

I declare under penalty of perjury that the foregoing is true and correct.

Executed June 19, 2020, in Los Angeles, California.

*[signature]*

Nargiza Lutz

1