Christian Kernkamp (CA Bar No. 314928; NY Bar No. 5721923)
ck@kernkamplaw.com
Kernkamp Law, APC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (213) 214-3030
Facsimile: (213) 433-3595

Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIURA CORPORATION, DBA SASABUNE BEVERLY HILLS AND NARGIZA LUTZ,<br><br>Plaintiffs,<br><br>v.<br><br>MUNTU DAVIS, M.D., M.P.H., IN HIS OFFICIAL CAPACITY AS HEALTH OFFICER FOR THE COUNTY OF LOS ANGELES,<br><br>Defendant. | No. 2:20-cv-05497--SVW-ADS<br><br>**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION**<br><br>[Filed concurrently with Declaration of Christian Kernkamp; Request for Judicial Notice; and Responses to Objections to Evidence]<br><br>Assigned to Hon. Stephen V. Wilson And Magistrate Judge Autumn D. Spaeth<br>Trial: None Set. |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........ iii
INTRODUCTION ........ 1
ARGUMENT ........ 1
A. Plaintiffs' Evidence is Sufficient at This Early Stage of the Litigation ........ 1
B. Defendant Fails to Refute Plaintiffs' Contention That *Jacobson* Does Not Require This Court to Apply a Presumption of Constitutionality to The County's Order ........ 2
C. Defendant Fails to Present a Compelling Reason Why Plaintiff Lutz Does Not Retain a Privacy Interest in Her Data Under *Carpenter v. United States* . 4
D. Plaintiff Lutz Has Presented Sufficient Evidence That Her Constitutional Rights of Association Are Burdened ........ 5
E. Plaintiff Sasabune Has a Constitutionally Protected Due Process Right to Fair Notice ........ 6
F. The Very Narrow Injunctive Relief Sought by Plaintiffs Would Not Harm Defendant ........ 7
CONCLUSION ........ 8

# TABLE OF AUTHORITIES

## CASES

*Bates v. Little Rock*, 361 U.S. 516 (1960) .......... 5

*Carpenter v. United States*, 138 S. Ct. 2206 (2018) .......... 4

*Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389 (9th Cir. 1984) .......... 2

*Kylo v. United States*, 533 U.S. 27 (2001) .......... 5

*Lambert v. California*, 355 U.S. 225 (1957) .......... 6

*N.A.A.C.P. v. Alabama*, 357 U.S. 449 (1958) .......... 5

*Straumann USA, LLC v. TruAbutment Inc.*, No. 8:19-cv-00878-JLS-DFM, 2019 WL 6887172 (C.D. Cal. Oct. 1, 2019) .......... 1

*United States v. Jones*, 565 U.S. 400 (2012) .......... 5

*United States v. Stevens*, 559 U.S. 460 (2010) .......... 5

*Univ. of Tex. v. Camenisch*, 451 U.S. 390 (1981) .......... 2

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* 455 U.S. 489 (1982) .......... 6

*Washington State Grange v. Washington State Republican Party*, 552 U.S. 442 (2008) .......... 5

## CONSTITUTIONAL PROVISIONS

U.S. Const., 5th Amend. .......... 6

## INTRODUCTION

Defendant has doubled down on its theory that the data collection provisions appearing in the Order are fully justified. This theory is not very convincing in light of the fact that Defendant has largely failed to address critical facts brought forth by Plaintiffs, such as the low mortality rate and key distinguishing factors between this case and Defendant's own selection of recent COVID-19 related cases.

Rather than address and fully respond to Plaintiffs' evidence, Defendant attempts to convince this Court to not consider most of it by way of a laundry list of evidentiary objections. This is also not convincing because Plaintiffs' have met the less stringent evidentiary standards that apply during proceedings occurring in the early stages of litigation, including motions for preliminary injunctions.

In asking this Court to apply a presumption of constitutionality to the data collection provisions Plaintiffs have challenged, Defendant interprets and applies *Jacobson* as if it gives an acting health officer a constitutional right to issue open ended health orders rather than the limited exception it is. When Defendant does address the merits of Plaintiffs' claims, it overstates both the showing that Plaintiffs must make and the likelihood that Defendant would suffer any harm from the very narrowly tailored preliminary injunction they are seeking.

## ARGUMENT

### A. Plaintiffs' Evidence is Sufficient at This Early Stage of the Litigation

The County attempts to dismiss Plaintiffs' evidence as if it is being submitted at a trial on the merits. Defendant's cite *Straumann USA, LLC v. TruAbutment Inc.*, No. 8:19-cv-00878-JLS-DFM, 2019 WL 6887172, at *1 n.2 (C.D. Cal. Oct. 1, 2019). The very Note 2 that Defendant references, states that a court "may relax the evidentiary standards and has the discretion to give inadmissible evidence some weight for preliminary injunction proceedings […]. (internal quotations omitted.)

The Supreme Court has long recognized that a preliminary injunction serves a limited purpose of preserving the status quo until a trial on the merits may be had.

*Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). For this reason, a […] preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than in a trial on the merits." *Id*. A party is not required to prove his case in full at the preliminary injunction stage and a court's factual and legal findings are not binding on a later trial on the merits. *Id*. Under this relaxed evidentiary standard, it is appropriate for a court to consider even hearsay evidence. *Flynt Distributing Co., Inc. v. Harvey*, 734 F.2d 1389, 1394 (9th Cir. 1984).

The law applies a far more lenient evidentiary standard at this early stage of litigation. Plaintiffs' counsel has authenticated the results of Plaintiffs' surveys. At this early stage of the litigation, Plaintiffs' evidence is admissible and sufficient to make their case.[1]

**B. Defendant Fails to Refute Plaintiffs' Contention That *Jacobson* Does Not Require This Court to Apply a Presumption of Constitutionality to The County's Order**

Defendant describes *Jacobson* as creating a "rule of law". (Defendant's Opposition, pg. 12.) This mischaracterization of *Jacobson* as some large carve out to fundamental rights would be a true case of the exception swallowing the constitution itself. *Jacobson* is more accurately described as a narrow finding that constitutional protections were not absolute in the face of a catastrophic health crisis causing the deaths of tens of millions of people with children most at risk.

For *Jacobson* to apply there must be a sufficiently severe health crisis underway. Defendant claims that new cases, testing positivity rates, and hospitalizations have significantly increased. (Defendant's Opposition, pg. 9). Defendant further claims that hospitals are at risk of being overwhelmed. (*Id*., 9-10). While it is true that confirmed cases continue to rise as an extraordinary number of tests are conducted each day, the County's own data does not appear to show that hospitals are at significant risk of being overwhelmed. (See Exhibit 9 to Plaintiffs'

[1] See also Plaintiffs' Responses to Defendant's Evidentiary Objections.

Request for Judicial Notice.) In fact, the County appears to be in a very stable position, including a large inventory of personal protective equipment, plenty of available beds, and ventilators. (*Id.*) The County has met its target in daily number of average deaths, available ICU beds, ventilator capacity, N95 masks, eye protection, face shields, gloves, gowns, daily COVID-19 diagnostic tests, and percentage of COVID-19 cases that have follow-up investigation initiated within 1 day of assignment. (See Exhibit 10 to Plaintiffs' Request for Judicial Notice.) This certainly was not where we were in March and April when the virus peaked.

Notably, Defendant does not address the most important question, which is the number of deaths, which as Plaintiffs pointed out in their moving papers, appears to have taken a clear downward trend. Overall, Defendant does not comment on the voluminous evidence Plaintiffs put forth to properly frame the current state of the health crisis, including death trends, no excess death in thirty states, very low infection fatality rate, a return to the seasonal baseline in pneumonia, influenza and COVID-19 mortality, and a larger spike in excess deaths in California just two years ago. In light of the foregoing, it has become increasingly hard to accept Defendant's continued reliance on a severe health crisis justification for the sweeping and indefinite data collection provisions appearing in the health order.

In similar fashion, Defendant dismisses Plaintiffs' entire discussion and analysis of recent cases that also involve challenges to government action during the coronavirus. Defendant only mentions these important cases in the footnotes of their brief. (See Defendant's Opposition, pg. 15.) Defendant takes the position that *Yandel v. City of Racine* is dissimilar because there, the vagueness arose from the health order incorporated by reference 180 pages of COVID-19 best practices while the data collection provisions in the County's order are self-contained. (*Id.*) However, as Plaintiffs point out in their moving papers, the health order in *Yandel* was deemed vague because of its use of the phrase "the standards therein" when referring to CDC and other best practices. This is similar to Defendant's use of confusing and

contradictory phrases in the data collection provisions of the order such as "practicable," "is offered," "must be maintained" and "to the extent possible." Plaintiffs' surveys and supporting declarations do show that there are serious issues of confusion here.

Defendant dismisses *Bailey v. Pritzker* as inapplicable because "Plaintiffs cannot make any argument that the Order is not authorized under Dr. Davis' statutory powers […]." (*Id.*) Defendant also dismisses *Quarles v. Beshear* because it "does not speak to any of the issues involved in this Motion." (*Id.*) But Defendant ignores the very reason Plaintiffs referred to these cases, which is that the cases also dealt with the exercise of emergency powers in an essentially open ended and indefinite manner. Furthermore, the plaintiffs in some of these cases sought much broader injunctive relief at the peak of the pandemic.

Defendant does not address, in any meaningful way, Plaintiffs' position that the recent cases, cited by Defendant, applying *Jacobson* are distinguishable from the instant matter. Unlike the health orders in these cases, the County's health order is vague and indefinite in nature. Furthermore, Plaintiffs are seeking very narrow relief that presents no harm whatsoever to Defendant or the citizens of the County of Los Angeles.

**C. Defendant Fails to Present a Compelling Reason Why Plaintiff Lutz Does Not Retain a Privacy Interest in Her Data Under *Carpenter v. United States***

Defendant argues that *Carpenter* does not apply to Plaintiff Lutz because in this case "there is not a comprehensive record of a person's movements continuously and automatically compiled and maintained at a single source." (Defendant's Opposition, pg. 18.) However, *Carpenter* was a decision in recognition of a person's right to be free from arbitrary invasions by government officials. *Carpenter v. United States*, 138 S. Ct. 2206, 2213 (2018). The case addressed the issue of how to apply the Fourth Amendment to "[…] a new phenomenon: the ability to chronicle a person's past movements through the record of his cell phone signals." *Id*. at 2210. The

Supreme Court ultimately found it reasonable to apply Fourth Amendment protections to cell phone signal records because not doing so would contravene reasonable expectations of privacy. *Id*. The Court itself noted that CSLI presented an even greater danger than the GPS tracking challenged in *Jones*. *Id*. citing to *United States v. Jones*, 565 U.S. 400 (2012). Also consider that, in *Kylo,* the Supreme Court noted that "the rule we adopt must take account of more sophisticated systems that are already in use or in development." *Kylo v. United States*, 533 U.S. 27, 36 (2001).

The location record that is developed for each individual under the County's health order is quite similar to the GPS tracking or CSLI location records under consideration in *Jones* and *Carpenter*. Contrary to Defendant's claim, the health order does create a comprehensive record of a person's movements throughout the County. That record is held indefinitely, unsecured, and readily available for arbitrary invasion by the government.

**D. Plaintiff Lutz Has Presented Sufficient Evidence That Her Constitutional Rights of Association Are Burdened**

Defendant takes the position that Plaintiff Lutz has failed to present any evidence that her constitutional rights are burdened by the County's health order. However, government action that may curtail the freedom to associate is subject to the closest scrutiny. *N.A.A.C.P. v. Alabama*, 357 U.S. 449, 460-61 (1958). Plaintiff Lutz' claim is not addressing a heavy-handed frontal attack on her constitutional rights but the more subtle governmental interference that is also forbidden. See *Bates v. Little Rock*, 361 U.S. 516, 522 (1960).

"A law may be invalidated as overbroad if a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." *United States v. Stevens*, 559 U.S. 460, 474 (2010) (internal quotations omitted); see also *Washington State Grange v. Washington State Republican Party*, 552 U.S. 442, 449, n. 6 (2008) ("Our cases recognize a second type of facial challenge in the First Amendment context under which a law may be overturned as

impermissibly overbroad because a substantial number of its applications are unconstitutional, judged in relation to the statute's plainly legitimate sweep." (internal quotations omitted).

Here, the governmental purpose of contact tracing can easily be achieved through a more narrowly tailored approach. Plaintiffs have already suggested that the County simply amend the health order so that it is clear and consistent with the position the County has taken in this case. Plaintiffs have already pointed out numerous ways these poorly written data collection provisions can lead to unconstitutional applications. As it stands under the County's health order, the data collection is indefinite, the data retention is indefinite, and the potential for abuse of that data, whether by government or third parties, are without any limit. Plaintiffs have put forth evidence in the form of declarations, survey results, and other data showing that the data collection provisions are vague enough that they are likely to be misinterpreted and subject to a substantial number of unconstitutional applications. That is a sufficient showing to demonstrate a probability of prevailing.

**E. Plaintiff Sasabune Has a Constitutionally Protected Due Process Right to Fair Notice**

Defendant's claim that the Order implicates no constitutionally protected conduct is not correct. An important component of due process protections is the right to fair notice and to be free of vague laws imposing criminal liability. *Lambert v. California*, 355 U.S. 225, 228 (1957); U.S. Const., 5th Amend.

Defendant cites to *Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.* and makes the point that economic and health related regulations are subject to a less strict vagueness test. 455 U.S. 489, 498 (1982). However, Defendant is incorrect that the Order only applies to businesses. It applies to virtually all activity within the County involving persons, from non-profit organizations and places of worship, to public museums and any office building. The Order is comprehensive. It is true that general commercial regulations may, at times, be afforded greater leniency but that

is because they usually carry civil and not criminal penalties and because businesses typically have the opportunity to consult legislation in advance. *Id*. at 498-99.

It is also true that a scienter requirement may mitigate a laws vagueness with respect to considerations of fair notice. *Id*. Here, however, we are dealing with an emergency order that is constantly amended and carries with it not just civil but also criminal penalties. There is no scienter requirement. Even a straightforward public health law—which this is not due to its incredible scope and immediate implementation—must, at a minimum, allow a person to discover its meaning through context or resorting to an administrative process. *Id*. at 498. There is no administrative process to resort to here. Many of the appendices in the Order do not even use the phrase "contact tracing". There are no minimal guidelines for enforcement officers to follow.

Defendant's position that Plaintiff Sasabune's concern is unfounded because the restaurant accepts reservations through OpenTable is unfounded. Making a reservation on OpenTable is clearly a voluntary act. OpenTable has a comprehensive data storage and protection policy[2] and even allows restaurants to provide customers with legally mandated notices pursuant to California's Consumer Protection Act.[3] Plaintiff Sasabune is not subject to civil and criminal sanctions for the utilization of OpenTable.

### F. The Very Narrow Injunctive Relief Sought by Plaintiffs Would Not Harm Defendant

Defendant contends that if this Court grants Plaintiffs' request for injunctive relief they will no longer be able to conduct contact tracing throughout the County. That is simply not true. Plaintiffs seek a very narrow injunction preventing the enforcement of these vague data collection provisions appearing in the Order. If granted, the County can easily amend the Order as it has done many times so that

[2] OpenTable Privacy Policy, https://www.opentable.com/legal/privacy-policy

[3] GDPR/CCPA Notification Opt-Ins in OpenTable, https://support.opentable.com/s/article/GDPR-FAQ?language=en_US

these provisions are clear and lawful. Plaintiffs suggest the Court give the County a reasonable time to make these necessary changes so that there is no disruption in contact tracing efforts.

## CONCLUSION

In light of the foregoing arguments, Plaintiffs respectfully request this Court to issue a very narrow preliminary injunction preventing Defendant from enforcing the data collection provisions appearing in the Order through civil and criminal sanctions. The Court's assistance in this matter is necessary as Plaintiffs have tried but failed to achieve this outcome through negotiation based on Defendant's assertion that the contact tracing program is voluntary.

Dated: July 27, 2020

/s/ Christian Kernkamp

Christian Kernkamp
(CA Bar No. 314928)
(NY Bar No. 5721923)
ck@kernkamplaw.com
Kernkamp Law, APC
1801 Century Park East, 24th Floor
Los Angeles, CA 90067
Telephone: (213) 214-3030
Facsimile: (213) 433-3595
Attorney for Plaintiffs